JOHN J. HANLEY *vs.* WESTMINSTER MOTORS, INC.

AUGUST 4, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition brought by an employee against his employer to review a preliminary agreement entered into by the parties under the provisions of the workmen's compensation act, general laws 1938, chapter 300. After a hearing in the superior court the trial justice entered a decree awarding compensation and medical expenses to the petitioner and the respondent has duly prosecuted its appeal to this court.

Referred to chronologically and briefly, the evidence discloses among other things the following facts. In 1942 while working, petitioner fell an appreciable distance and suffered a fracture of his first lumbar vertebra. From that injury he apparently recovered completely within a year and went to work at the Quonset Point Naval Air Station as a mechanic doing lifting and heavy work on trucks without experiencing any pain. Later he became an inspector of motor vehicles there.

After the war he was discharged from that position and in 1947 was employed by respondent as a stock clerk and a parts manager. In February 1948 while working, a casting slipped out of his hands slightly injuring his right knee and back. On that occasion he was out of work only four days and signed a settlement receipt showing a compensation payment of $13.33. On January 18, 1949 while still employed by respondent in the same capacity petitioner

was carrying a package from a higher level to the main floor, which was polished, and he suffered an injury by slipping, although not falling, while stepping down one step. At that time he experienced a severe pain in his right lower back area which radiated down into his right leg. This is the injury which is involved in the instant proceeding.

Although suffering considerable pain and receiving medical treatment, petitioner continued to work until February 21, 1949 when he became totally disabled. However, he returned to work March 2 because he did not wish to lose his job. On March 7 he signed the preliminary agreement under consideration and also a settlement receipt for the payment of $16.66 to cover the period he was out of work because of his disability, both instruments being duly approved by the director of labor. The petitioner continued in respondent's employment until May 25, 1949 when he was discharged.

Thereafter in July 1949 he worked for about ten days for another employer but was then discharged. He has done no work since July 16, 1949. His present petition for review was filed in the department of labor March 13, 1950. Since his injury on January 18, 1949 he has continuously suffered pain, varying in intensity, which originates in his lower back on the right side and radiates down that leg. Between the date of the accident and April 1950 he has called on at least fourteen doctors, ten of whom testified in the superior court. At that time petitioner was fifty-eight years of age.

The respondent's reasons of appeal number twenty-eight but only the first nine, which involve the same issue, are now being pressed. The remaining reasons of appeal are expressly waived. It is respondent's contention that the trial justice erred in awarding compensation and medical expenses for disability resulting from an injury which is not contained in the preliminary agreement being reviewed. In support of such contention the respondent has cited the following cases: *Airedale Worsted Mills, Inc.* v. *Cote,* 75 R. I. 361; *Manville-Jenckes Corp.* v. *Lubinsky,* 76 R. I. 36; *Peters*

v. *Monowatt Electric Corp.*, 78 R. I. 134; *Wanskuck Co.* v. *Puleo*, 78 R. I. 447.

Unquestionably those cases stand for the general principles that in the absence of challenge an agreement approved by the director of labor is final to the extent of the facts therein agreed upon, and that on a petition to review such an agreement the trial justice in awarding compensation is not authorized to go beyond the specific injury stated therein. The petitioner, however, does not dispute the soundness of the above principles but argues that those cases are clearly distinguishable from the case at bar and do not govern it. He urges that he is incapacitated by the injury which is set out in such agreement after the printed words "Nature and location of injury" as: "Rt. sacro-iliac area."

Upon consideration it is our opinion that the petitioner's contention has merit. An examination of the above cases shows that in each one the preliminary agreement entered into by the parties and then being reviewed contained a statement of a *specific* injury which was agreed to as being the cause of the employee's incapacity. For example, in the *Wanskuck Co.* case the injury was described in the agreement as "strain calf muscles," whereas on review the employee in seeking compensation attempted unsuccessfully to show that bursitis in the back of the heel or ankle was within the scope of the injury set out in the agreement. The other cases cited by respondent dealt with other types of specific injuries, and in each of them the court in substance followed the general principles of law hereinbefore referred to in regard to the limitation placed upon the scope of its examination when a specific injury was clearly set out in the preliminary agreement.

However, a consideration of the preliminary agreement in the instant cause shows that the parties failed to set out clearly in that instrument and to agree upon any *specific* injury as the cause of petitioner's alleged incapacity to work. As already indicated the words "Rt. sacro-iliac area" in the agreement follow the phrase "Nature and location of

injury." Such language in our judgment should be given its ordinary and reasonable meaning and not a strained construction. So considered it appears that the location of the injury is set out, namely, right sacroiliac area, but that the *specific* nature of the injury from which petitioner was suffering was not indicated in the agreement other than by inference as some injury in that area.

It is certainly a reasonable assumption that the parties in entering into such agreement, which was later approved by the director of labor, did so because the petitioner had been incapacitated by an injury in that general area and that it was suffered in the course of his employment. The specific nature of that injury was not described in the agreement, but whatever it was respondent agreed it was compensable. Indeed the respondent recognized that fact by paying petitioner in March 1949 as compensation the sum of $16.66 and taking his settlement receipt therefor which referred in terms to the injury sustained by him on January 18, 1949, again without specifically describing it. In this connectiton it is significant that the evidence shows that the preliminary agreement and the settlement receipt were drawn by an adjuster representing respondent's insurance carrier. Apparently the agreement was entered into willingly by both parties and we are of the opinion that in the existing circumstances the respondent is not in a position to take advantage of the fact that through oversight or for some other reason the particular nature of petitioner's injury in the designated area was not set out in the agreement.

It is our judgment that, in the peculiar situation appearing herein, petitioner was entitled on review of the preliminary agreement to show, if he could, the specific nature of the injury which was described in the agreement as "Rt. sacro-iliac area," for which respondent had actually paid compensation, and to show that such injury generally is in the right sacroiliac area and is now allegedly causing

his present incapacity. This is in no way contrary to the holdings in the cases cited by respondent, as in each of them a *specific* injury was contained in the preliminary agreement being reviewed, but each employee was attempting to recover compensation for a *different* injury that was not set out therein. No such circumstances are present here where the petitioner is merely attempting to particularize the same injury which in the agreement is referred to only generally or by inference.

Both parties introduced considerable evidence through doctors and medical experts which was to some extent conflicting as to the exact nature of the injury from which petitioner was presently suffering and whether it was caused by the accident of January 18, 1949. In substance it is the latter's contention that the accident in question caused a dislocation of the intervertebral disc beneath his fifth sacral vertebra causing such disc to come in contact with the sciatic nerve on his right side, with the result that he has more or less continuous pain in his right hip, leg and foot, thereby incapacitating him from doing work.

The respondent argues in substance that the decree does not contain any express finding that the dislocated disc was within the description of the injury set out in the preliminary agreement; that such a finding would be necessary before compensation could be awarded for such a condition; and that the decree does have an express finding that the injury set out in the preliminary agreement is located immediately above the dislocated disc. The respondent in making such contention undoubtedly is referring to the third finding of fact which reads as follows: "That the 'Rt. sacro-iliac area' described on the said preliminary agreement sought to be reviewed is immediately above the location of the said disc."

Upon consideration it is our opinion that the respondent's argument is not sound. In view of the fact that the trial justice in the decree entered by him granted the petitioner

relief by allowing him compensation and medical expenses, it seems plain that the finding in question, which is ambiguous, should be construed in the light of the circumstances so as to give reasonable effect both to the finding and to the general disposition of the case if that be possible. We believe that such finding can properly be so construed. In the first place we have pointed out that in the preliminary agreement merely the location of the injury was set out but that the *specific nature* of petitioner's injury was not described and that in the circumstances he was entitled to show, if he could, that such injury was in that area.

In ascertaining the meaning of the above finding the following statement appears in the decision of the trial justice in reference to language in the preliminary agreement: "Now that does not describe any specific organ nor any specific area of the human body. It describes a general area which includes many organs. It is immediately above the location of the disc under the fifth vertebra that I have referred to, and it seems to me that is an adequate description for the purpose of the case * * *." The trial justice also said in substance that he did not feel required to hold that the description in the preliminary agreement is so restricting, so confined, and so definite that the injury to the disc under the fifth vertebra could not be regarded as the cause of the injury and disability under consideration.

In our opinion the right sacroiliac area as here used by laymen in writing the agreement should be given a reasonable and nontechnical construction. Unquestionably the pain which was causing petitioner's incapacity was in that general area and in our judgment so was the dislocated disc under the fifth sacral vertebra. That disc allegedly was in contact with the sciatic nerve on petitioner's right side. We are assisted in arriving at our construction of the phrase in question by the following testimony given by Dr. James R. McKendry: "Q. Well, let me ask you this: Just considering the injury set out here, just having that in mind, that is what the parties have agreed upon, I ask you is his

present disability such as you found due to this injury described as a right sacroiliac area, or is he disabled by injuries which do not fall within this description or coverage. That is the question I'm after. You've mentioned sciatica and so forth and so on. A. Well, the disc beneath the fifth lumbar vertebrae on top of the sacrum is certainly very close to your right sacroiliac area; as a matter of fact, right next to it, and I think if you want to define it exactly as due to an injury in that area, I think yes. Using the term, area."

Finally in passing upon the meaning of the third finding of fact it is to be noted that there is no express finding that the disc beneath the fifth sacral vertebra is not within the right sacroiliac area as generally and broadly understood and defined, and no such finding should be implied. The finding that such area is immediately above the location of the disc does not necessarily mean that such location is outside of that general area, and in view of the trial justice's award of compensation the finding, at least by reasonable implication, may be construed as placing the injured disc within the general area in the agreement.

In our opinion the determination of this case should not rest on the position of an anatomical hair line dividing portions of the human body especially where the broad and general term "area" is the important word to be construed. It is our judgment that in the circumstances the third finding of fact, construed as we have indicated above, does not prevent the awarding of disability compensation and medical expenses to the petitioner. We find no error in the decision of the trial justice.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Charles F. Cottam*, for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring, Thomas J. Hogan, Joseph H. Gainer, Jr.*, for respondent.